IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| CITY OF ROCKWOOD TENNESSEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. _____ |
| | ) | |
| IMCO RECYCLING, INC., | ) | |
| | ) | |
| Defendant | ) | |

**COMPLAINT**

Comes now the City of Rockwood, Tennessee and states as follows:

STATEMENT OF CASE

Plaintiff brings this civil action for unjust enrichment and money damages.

THE PARTIES

1. Plaintiff city of Rockwood is a municipality located in Roane County, Tennessee, and incorporated under the laws of Tennessee, and is acting through and on behalf of its utility division, Rockwood Water & Gas (RW&G).

2. Defendant IMCO Recycling, Inc. (IMCO) is a Delaware Corporation with its principal place of business in Irving, Texas, that may be served through its registered agent for service, CT Corporation System, 530 Gay Street, Knoxville, Tennessee. Defendant owns and until recently operated a manufacturing facility in Rockwood, Tennessee.

JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §1332 in that plaintiff is an incorporated municipality of Tennessee and defendant is a citizen of a state other than Tennessee, and has its principal place of business in a state other than Tennessee, and the amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy Five Thousand Dollars.

4. This Court has supplemental jurisdiction over plaintiff's claim against the defendant pursuant to 28 U.S.C. §1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that the events giving rise to plaintiff's claim occurred in this judicial district.

## GENERAL ALLEGATIONS

6. For years IMCO procured natural gas and had it delivered to East Tennessee National Gas Company (a natural gas transporter serving RW&G and surrounding utilities by pipeline) for RW&G's account. RW&G then redelivered the natural gas through RW&G's gas distribution system to IMCO's plant, with RW&G being paid a transportation fee for that service.

7. As is the practice, IMCO placed orders through "nominations" made by IMCO before the month in which the gas was to be received. RW&G, like other utility districts, took from the transporter the gas it, RW&G, had nominated for the customers it supplied, and the gas nominated directly by industrial customers in Rockwood's district which was to be transported through RW&G's system.

8. "Imbalances" refer to the difference between what a natural gas customer orders monthly and what it actually takes. An imbalance exists if the customer takes more than it has ordered or it takes less than it has ordered.

9. Rather than the utility or the customer paying the other for quantities over or under what was nominated, imbalances are reconciled monthly; that is, at the end of the month the customer is given credit on the next month's bill if the customer received less gas than it nominated, and it is charged on the next month's bill for gas it received above what it had nominated.

10. Monthly reconciliations of imbalances was how the transporter handled its

accounts with RW&G, is standard practice in the industry, and is the way imbalances were to have been handled with the natural gas RW&G delivered to IMCO.

11. In the spring of 2003, IMCO purposely undernominated for the months of April and May 2003, by a considerable amount, the gas it expected to take and in fact did take.

12. The discrepancy was caught by RW&G and brought to IMCO's attention. IMCO grossly undernominated again for June 2003. RW&G demanded payment for cost of the natural gas RW&G had to absorb as a result of the undernominations in April, May and June 2003. IMCO refused. RW&G had no choice but to cut off all transportation of gas to IMCO.

13. The cost of the natural gas received by IMCO in April, May and June 2003, for which it did not pay was $219,369.00, a cost of which had to be absorbed by RW&G. The transportation fees which IMCO avoided by not paying for that natural gas amounted to $7,581.30.

## UNJUST ENRICHMENT

14. Plaintiff incorporates by reference the allegations in paragraphs 1 through 13.

15. Defendant accepted the natural gas delivered to it by plaintiff in April, May and June 2003 knowing that it had grossly undernominated the natural gas it would receive.

16. Defendant benefitted from the use of the excess natural gas, and the avoidance of transportation fees, by using the gas in its manufacturing operations without compensating plaintiff.

17. Defendant has been unjustly enriched at plaintiff's expense and it would be inequitable for defendant to retain the benefit of the natural gas without paying for it.

WHEREFORE, plaintiff asks that it be given the following relief:

1. That defendant pay to plaintiff damages in the amount of Two Hundred Twenty

Six Thousand Nine Hundred Fifty Dollars ($226,950.00) for defendant's unjust enrichment for taking and using natural gas far in excess of what it ordered for the months of April, May and June, 2003, without compensating plaintiff for the cost of the natural gas or for the transportation fees due for the delivery of that gas.

     2.    Plaintiff's costs, attorneys fees, and such other relief as this court deems just and proper upon the hearing of this cause.

                                s/ William P. Snyder
                                  William P. Snyder
                                  TN BPR #009859
                                  Kramer, Rayson, Leake,
                                  Rodgers & Morgan, LLP
                                  P. O. Box 629
                                  Knoxville, TN   37901-0629
                                  (865) 525-5134

                                  Counsel for Plaintiff City of Rockwood